**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-CV-2154

MIONIX, LLC,
a Nevada limited liability company

      Plaintiff,

v.

ACS TECHNOLOGY (aka) Mionix CO.,
a Colorado limited liability company;
WALTER LARRY L'HOTTA, an individual; and
DEBORAH ANN L'HOTTA, an individual,

      Defendants.

---

## COMPLAINT WITH JURY DEMAND

---

Plaintiff MIONIX, LLC ("Mionix"), for its Complaint (the "Complaint") against Defendants ACS TECHNOLOGY (aka) Mionix CO. ("ACS"), Walter Larry L'Hotta ("Larry L'Hotta") and Deborah Ann L'Hotta (collectively, "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1.    For over a decade, Mionix, either directly or through its affiliate Mionix Corporation (Mionix Corporation and Mionix are sometimes referred to collectively as "Plaintiff" and/or "Mionix"), has been a diversified, platform-based biotechnology firm dedicated to creating innovative and proprietary technology and product solutions for diverse industries, including food safety, facilities sanitation, agribusiness and building materials.

24446906.3

2.      Defendant Larry L'Hotta, a former Mionix executive, his wife Deborah L'Hotta, and their wholly-owned and controlled business entity ACS have been using Mionix's trademarks, patents, literature, marketing materials, regulatory approvals and trade secrets to market products they claim as their own.  To date, and to Mionix's understanding and belief, Defendants' misappropriation and misuse of Mionix's property rights appear to be concentrated on the food safety and agribusiness products.  Defendants' misconduct has generated and continues to generate ongoing damages to Mionix.

3.      As a result, Mionix brings this Complaint for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*, federal trademark infringement under 15 U.S.C. §§ 1051-1127, including but not limited to 15 U.S.C. §§ 1114, 1116, 1117 and 1118, violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101, *et seq.*, and unfair competition and trademark infringement under Colorado common law.

## PARTIES

4.      Mionix is a Nevada limited liability company, having its principal place of business at 3960 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169.  The members of Mionix are Frank Parcell, a citizen and resident of California, and Mionix Corporation, a Delaware corporation whose principal place of business is Las Vegas, Nevada.

5.      Defendant ACS is a Colorado limited liability company whose principal place of business is 5470 Wilson Road, Colorado Springs, Colorado 80919.  Defendants Larry and Deborah L'Hotta are members and managers of, and exercise control over the affairs of, Defendant ACS.  On August 4, 2016, ACS filed a Statement of Dissolution with the Colorado Secretary of State's office.

24446906.3

6.      Defendants Larry and Deborah L'Hotta (collectively, the L'Hottas) are individuals residing in Colorado Springs, Colorado.

### JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. Section 1331, as this action arises under the laws of the United States, specifically the Lanham Act, 15 U.S.C. §§ 1051-1127. Thus, this Court also has subject matter jurisdiction under 28 U.S.C. § 1338(a) and (b), as this action relates to trademarks and asserts a claim of unfair competition joined to a substantial and related claim under trademark laws.  The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

8.      This Court has subject matter jurisdiction under 28 U.S.C. Section 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.  Specifically, Plaintiff is a Nevada limited liability company with members that are California and Nevada citizens, while Defendants are citizens of Colorado.

9.      The Court has personal jurisdiction over the Defendants because they reside in this judicial district and Plaintiff's claims arise from Defendants' misconduct that took place within this judicial district.

10.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside in this judicial district and because Plaintiff's claims arise from Defendants' misconduct that took place within this judicial district.

24446906.3

## FACTUAL BACKGROUND

11.     Mionix Corporation was incorporated in Delaware in August 2000.  In or about August 2015, Plaintiff Mionix, LLC acquired substantially all of the assets of Mionix Corporation, including but not limited to intellectual property, claims and causes of action (the "Acquisition").

### Trademarks

12.     At all relevant times prior to the Acquisition, Mionix Corporation owned United States Trademark Registration No. 3,107,281 for the FreshFlo trademark (see Exhibit A, "FreshFlo"), applied for on January 22, 2004, and registered on June 20, 2006.  Since at least 2006, Mionix Corporation used FreshFlo on or in connection with a product that acidifies, sanitizes, disinfects and preserves drinking water for farm animals and other agricultural goods. Mionix Corporation and Plaintiff have expended substantial effort and financial resources promoting and selling product under the FreshFlo trademark.  As a result, Mionix Corporation and Plaintiff have developed a reputation and goodwill of great value and are widely recognized as the source for products under the FreshFlo mark.  At all relevant times following the Acquisition, Plaintiff has owned all right, title and interest in the FreshFlo trademark.

13.     At all relevant times prior to the Acquisition, Mionix Corporation owned United States Trademark Registration No. 4,428,535 for the FreshFlo 100 trademark (see Exhibit B, "FreshFlo 100"), applied for on March 13, 2013, and registered on November 5, 2013.  Since at least 2013, Mionix Corporation used FreshFlo 100 on or in connection with a product that acidifies, sanitizes, disinfects and preserves drinking water for farm animals and other agricultural goods.  Mionix Corporation and Plaintiff have expended substantial effort and

4

financial resources promoting and selling product under the FreshFlo 100 trademark.  As a result, Mionix Corporation and Plaintiff have developed a reputation and goodwill of great value and are widely recognized as the source for products under the FreshFlo 100 mark.  At all relevant times following the Acquisition, Plaintiff has owned all right, title and interest in the FreshFlo 100 trademark.

14.    At all relevant times prior to the Acquisition, Mionix Corporation owned United States Trademark Registration No. 3,133,460 for the Mionix trademark (see <u>Exhibit C</u>, "Mionix"), applied for on February 3, 2004, and registered on August 22, 2006.  Since at least 2006, Mionix Corporation used Mionix on or in connection with acidic chemical additives used as acidulating agents, sanitizers, disinfectants, preservatives and anti-microbials in the manufacture of food, chemical, medical, pharmaceutical, consumer and agribusiness products. Mionix Corporation and Plaintiff have expended substantial effort and financial resources promoting and selling product under the Mionix trademark.  As a result, Mionix Corporation and Plaintiff have developed a reputation and goodwill of great value and are widely recognized as the source for products under the Mionix mark.  At all relevant times following the Acquisition, Plaintiff has owned all right, title and interest in the Mionix trademark.

15.    At all relevant times prior to the Acquisition, Mionix Corporation owned United States Trademark Registration No. 3,252,135 for the pHresh trademark (see <u>Exhibit D</u>, "pHresh"), applied for on May 24, 2004, and registered on June 12, 2007.  Since at least 2007, Mionix Corporation used pHresh on or in connection with acidic chemical additives used as acidulating agents, sanitizers, disinfectants, preservatives and anti-microbials in the manufacture of food, chemical, medical, pharmaceutical, consumer and agribusiness products.  Mionix

24446906.3

Corporation and Plaintiff have expended substantial effort and financial resources promoting and selling product under the pHresh trademark.  As a result, Mionix Corporation and Plaintiff have developed a reputation and goodwill of great value and are widely recognized as the source for products under the pHresh mark.  At all relevant times following the Acquisition, Plaintiff has owned all right, title and interest in the pHresh trademark.

16.     At all relevant times prior to the Acquisition, Mionix Corporation owned United States Trademark Registration No. 2,822,399 for the Safe2O trademark (see Exhibit E, "Safe2O"), applied for on October 1, 2002, and registered on March 16, 2004.  Since at least 2004, Mionix Corporation used Safe2O on or in connection with acidic chemical mixtures used as an acidulate, sanitizer, disinfectant and preservative in the manufacture of food, chemical, medical, pharmaceutical, consumer and agribusiness products.  Mionix Corporation and Plaintiff have expended substantial effort and financial resources promoting and selling product under the Safe2O trademark.  As a result, Mionix Corporation and Plaintiff have developed a reputation and goodwill of great value and are widely recognized as the source for products under the Safe2O mark.  At all relevant times following the Acquisition, Plaintiff has owned all right, title and interest in the Safe2O trademark.  The Safe2O, pHresh, Mionix, FreshFlo 100 and FreshFlo trademarks are hereinafter collectively referred to as the "Trademarks."

17.     On or about June 6, 2016, Mionix filed applications with the United States Patent & Trademark Office for the following trademarks: ACS, Acidic Calcium Sulfate and Acidified Calcium Sulfate, covering acidic chemical additives, namely chemical mixtures used as acidulating agents, sanitizers, disinfectants, preservatives and anti-microbials in the manufacture of food, animal feed, chemical, medical, pharmaceutical, consumer and agribusiness products;

6

acidic additive to acidify, sanitize, disinfect and preserve animal drinking water and agricultural products (collectively, the "Pending Trademarks").

### Patents

18.     In addition to its other intellectual property, Mionix has numerous patents protecting the underlying Products that Defendants falsely claim are their own when they assert that they are selling products based on their "unique patented technology."

19.     Specifically, on or about August 20, 2002, the United States Patent and Trademark Office issued United States Patent No. 6,436,891, entitled "Adduct Having an Acidic Solution of Sparingly-Soluble Group IIA Complexes" to Mionix Corporation (the "'891 Patent").  A copy of the '891 Patent is attached hereto as <u>Exhibit F</u>.  At all relevant times prior to the Acquisition, Mionix Corporation owned all right, title and interest in the '891 Patent.  At all relevant times since the Acquisition, Plaintiff has owned all right, title and interest in the '891 Patent.

20.     On or about April 19, 2005, the United States Patent and Trademark Office issued United States Patent No. 6,881,424, entitled "Highly Acidic Metalated Organic Acid" to Mionix Corporation (the "'424 Patent").  A copy of the '424 Patent is attached hereto as <u>Exhibit G</u>.  At all relevant times prior to the Acquisition, Mionix Corporation owned all right, title and interest in the '424 Patent.  At all relevant times since the Acquisition, Plaintiff has owned all right, title and interest in the '424 Patent.

21.     On or about June 7, 2005, the United States Patent and Trademark Office issued United States Patent No. 6,902,753, entitled "Acidic Solution of Sparingly-Soluble Group IIA Complexes" to Mionix Corporation (the "'753 Patent").  A copy of the '753 Patent is attached

24446906.3

hereto as <u>Exhibit H</u>.  At all relevant times prior to the Acquisition, Mionix Corporation owned all right, title and interest in the '753 Patent.  At all relevant times since the Acquisition, Plaintiff has owned all right, title and interest in the '753 Patent.

22.     On or about October 26, 2004, the United States Patent and Trademark Office issued United States Patent No. 6,808,730, entitled "Highly Acidic Metalated Organic Acid" to Mionix Corporation (the "'730 Patent").  A copy of the '730 Patent is attached hereto as <u>Exhibit I</u>.  At all relevant times prior to the Acquisition, Mionix Corporation owned all right, title and interest in the '730 Patent.  At all relevant times since the Acquisition, Plaintiff has owned all right, title and interest in the '730 Patent.

23.     On or about September 30, 2004, the Australian Patent Office issued Australia Patent No. 774,058, entitled "Acidic solution of Sparingly-Soluble Group IIA Complexes (the "'058 Patent").  At all relevant times prior to the Acquisition, Mionix Corporation owned all right, title and interest in the '058 Patent.  At all relevant times since the Acquisition, Plaintiff has owned all right, title and interest in the '058 Patent.

24.     On or about July 13, 2004, the Australian Patent Office issued Australia Patent No. 771,148, entitled "Adduct Solution of Sparingly-Soluble Group IIA Complexes (the "'148 Patent").  At all relevant times prior to the Acquisition, Mionix Corporation owned all right, title and interest in the '148 Patent.  At all relevant times since the Acquisition, Plaintiff has owned all right, title and interest in the '148 Patent.

25.     On or about June 3, 2003, the United States Patent and Trademark Office issued United States Patent No. 6,572,908, entitled "Highly Acidic Metalated Organic Acid" to Mionix Corporation (the "'908 Patent").  A copy of the '908 Patent is attached hereto as <u>Exhibit J</u>.  At all

relevant times prior to the Acquisition, Mionix Corporation owned all right, title and interest in the '908 Patent. At all relevant times since the Acquisition, Plaintiff has owned all right, title and interest in the '908 Patent. The '908 Patent, the '148 Patent, the '058 Patent, the '730 Patent, the '753 Patent, the '424 Patent and the '891 Patent are hereinafter collectively referred to as the "Patents."

**Trade Dress**

26.     Mionix (and before it, Mionix Corporation) is a highly successful manufacturer of acidic chemical additives, including chemical mixtures used as acidulating agents, sanitizers, disinfectants, preservatives and anti-microbials in the manufacture of food, animal feed, chemical, medical, pharmaceutical, consumer and agribusiness products; and acidic additives to acidify, sanitize, disinfect and preserve animal drinking water and agricultural products (the "Products"). Mionix markets and sells the Products in interstate commerce under the proprietary brand names Mionix™, FreshFlo™, FreshFlo 100™, pHresh™ and Safe2O™ (collectively, the "Mionix Trade Dress").

27.     Since its introduction into the marketplace over the past 12 years, the Mionix Trade Dress has been very successful. Mionix Corporation and Plaintiff have devoted substantial time, effort and resources to the development and promotion in the United States of the Mionix Trade Dress. As a result of these promotional efforts, the purchasing marketplace has come to know, rely on and recognize the Mionix Trade Dress, which distinguishes Mionix from its competitors. As a result, the Mionix Trade Dress has acquired secondary importance in the minds of the consuming public as identifying or being associated with Plaintiff and Mionix

Corporation exclusively, and has established valuable goodwill and reputation for Plaintiff and Mionix Corporation.

28.     Plaintiff and Mionix Corporation have sold no less than $3,387,204 of the Products under the Mionix Trade Dress since the inception of the Mionix Trade Dress.

### Defendants' Misconduct

29.     Mionix Corporation hired Defendant Larry L'Hotta ("Larry") in or about July 2004.  Larry served as Mionix's National Sales Manager and Director of Sales and Marketing for a period of three years.  His employment ceased at the end of July 2007.

30.     In October 2007, at Larry's request, Mionix Corporation granted Larry a non-exclusive marketing and sales license for a period of 24 months.  The purpose of this license was to permit Larry to market and sell Mionix Products on his own, specifically those Products known as ACS 100 (aka ACS 10.0), ACS 50 (aka ACS 5.0), RTE-01 (aka ACS RTE-01), RTE-03 (aka ACS RTE-03), FreshFlo 100 and pHixr 100.   Additional Mionix Products were eventually permitted under the parties' agreement.  The license expired in October 2009, at which point Larry no longer had any authority to market, sell, distribute or make any Mionix Products nor use any Trademarks, literature, material, regulatory approvals, studies, Trade Dress or property of any sort.

31.     After the license expired, Larry recommenced his use of Mionix literature, material, regulatory approvals, and studies to sell Mionix Products—but without any authorization from Mionix.  On information and belief, Larry also misappropriated Mionix Trademarks and Trade Dress to sell his own products.   When Mionix learned of this

24446906.3

misappropriation in early 2013, it demanded, via counsel, that Larry cease all offending activities.  Larry promptly confirmed in writing his intent to comply with Mionix' demands.

32.     Unfortunately, Larry's written assurances were simply false, as Mionix has recently learned that each of Defendants has continued that misbehavior in at least the following ways:

a.     They have been using Mionix Product and mislabeling it as their own.

b.     They have continued to use the FreshFlo and FreshFlo 100 Trademarks in their marketing materials.

c.     They have misappropriated Mionix studies for Mionix Products and have posted them on their own website, www.acsproductinfo.com, to confuse consumers into believing that the Mionix studies apply to Defendants' products.

d.     They have cut and pasted much of the Mionix website and advertised that their products are patented and approved by the USDA and United States Food and Drug Administration ("FDA") when, in reality, they are describing Mionix Products that have been patented and approved by the USDA and FDA:

## About Us

**ACS Technology Inc.** is a diversified, platform based biotechnology company, dedicated to creating innovative and proprietary technology, products, and solutions for quality assurance in such diverse industries as food safety, facilities sanitation, agribusiness, and pet food and fish processing industry, to enhance the quality of products worldwide.

This unique patented technology -- which is a multi-industry and multi-application platform called _**Acidic Calcium Sulfate (ACS or LpH 100)**_ also known as acidified calcium sulfate, is the foundation for a family of formulations of SafepHix™ brand products, that are **" FDA and USDA  Approved ".**  ACS has successfully enabled ACS Technology products to effectively inhibit microbial growth and substantially _reduced pathogen contamination levels_, thus making **ACS Technology, a leader in Food Safety.**

**ACS Technology agribusiness** line of value added products are focused on providing food animal growers with "Acidic Calcium Sulfate" based products that help reduce and control bacterial contaminates for **Quality Assurance.**  These products include **" LpH 100 ™ "**, our premium animal drinking water acidulant, which helps produce healthier birds, resulting in Higher Yields and Lower Mortality Rates, and our market leading poultry processing water acidulant, with an _automated system that consistantly maintains Salmonella levels from "0" to 5%_, and 2 _New_ additions, **" ATF 100 "** for **Animal Feed Treatment**, and **" PFT 100 "** for **Dog / Pet Food Treatment** for **Salmonella Control** and other pathogens.

e.    They have posted a United States Department of Agriculture ("USDA") report entitled "antimicrobial technology for poultry" and references to Mionix Patents as if the patents belonged to Defendants and as if the study described Defendants' products.

f.    They have been selling Mionix Products, including but not limited to Safe2O RTE 01, without permission and without paying any royalties to Mionix.

g.    They have copied the Mionix label and used it as their own.

h.    They have copied Mionix scientific publications and validation studies from the Mionix website and posted them on ACS' website, as if the studies belonged to ACS and described ACS products.

i.    They have published a USDA cantaloupe study using Mionix Safe2O ACS 50 at 1.2%, and falsely edited the study so that it reads that the study "was conducted to investigate the effects of surface sanitization of whole cantaloupes with ACS Technology's SAFE-pHix brand, acidified calcium Sulfate (ACS) aka (LpH 100) in

12

comparison with three common sanitizers on microbial population and quality of fresh cut cantaloupes."

j.      They have falsely advertised a litchi fruit study that was published in the Journal of Agriculture and Food Chemistry that was performed with a number of companies including Mionix using a number of chemicals, including but not limited to Mionix' Safe2O ACS 50 (5 Normal) as having used Defendants' product LPH 100 (10 Normal). The study did not use Defendants' product and Defendants did not participate in the study.

k.      They have advertised a pumpkin pie study conducted by Mionix as if it is their own and as if it describes their product, when in reality the product that was tested was a Mionix product.

l.      They have utilized Mionix studies validating the use of Mionix products for use in controlling salmonella and campylobacter as though the studies described the effectiveness of their product, when in reality the product that was tested was a Mionix product.

m.      They have advertised a study performed by Mionix showing the effectiveness of Safe2O as though the study were showing the effectiveness of Defendants' product, when in reality the product that was tested was a Mionix product.

n.      They have falsely advertised that they own each of the Mionix Patents and that the Mionix Patents refer to their products, not those of Mionix.

o.      They have owned and operated a website called www.freshflo100.com, which is Mionix Trade Dress and is a Mionix Trademark.

24446906.3

p.      In their advertising and promotional materials on their website, they have edited the Mionix ACS 100 MSDS sheet to change the manufacturer from Mionix to "ACS Technology", and even left the Mionix part number 14033 on the Material Safety Data Sheet (a federally-required disclosure also known as an "MSDS").

q.      They have begun using ACS in their corporate name.

r.      They are using the terms "Acidic Calcium Sulfate" and "Acidified Calcium Sulfate" in their marketing materials and product descriptions.

33.     Defendants' conduct, acts and omissions described above are hereinafter referred to as the "Infringing Conduct."

34.     On or about June 28, 2016, Mionix demanded that Defendants immediately cease this infringing conduct.

35.     Defendants have failed to adequately respond to Mionix's demand.

## FIRST CLAIM FOR RELIEF
### (Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B))

36.     Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully set forth herein.

37.     Defendants' Infringing Conduct constitutes an attempt to trade on the goodwill that Plaintiff has developed in the Mionix Patents, Trademarks, and Pending Trademarks, to Plaintiff's harm.

38.     The Infringing Conduct constitutes use of false designations or origin which are likely to cause confusion, mistake or deception as to origin, sponsorship or approval in violation of Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a).

24446906.3

39.     Defendants' Infringing Conduct is a willful violation of Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a).

40.     As a result of Defendants' Infringing Conduct, Plaintiff has suffered commercial harm.

41.     Defendants' Infringing Conduct continues to harm Plaintiffs irreparably, and Plaintiffs have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (False Designation of Origin – Federal Unfair Competition)

42.     Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully set forth herein.

43.     This claim for relief arises under the Lanham Act, 15 U.S.C. Section 1125(a).

44.     The Defendants' Infringing Conduct complained of herein, including but not limited to Defendants' use of the Patents, Trademarks, and Pending Trademarks, constitutes a willful false designation of origin and misrepresentation in violation of 15 U.S.C. Section 1125(a).  Defendants have inflicted damage and irreparable injury on Plaintiff for which Plaintiff has no adequate remedy at law, and for which Plaintiff will continue to suffer injury unless Defendants are restrained and enjoined from further inflicting.

## THIRD CLAIM FOR RELIEF
### (Federal Trademark Infringement)

45.     Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully set forth herein.

46.     This claim for relief arises under the Federal Trademark Act, 15 U.S.C. Sections 1051-1127, including but not limited to Sections 1114, 1116, 1117 and 1118.

24446906.3

47.     Defendants have engaged in their Infringing Conduct in a manner which has caused actual confusion and is likely to cause further confusion, mistake, or deception.

48.     Defendants' Infringing Conduct, including but not limited to their unauthorized use of the Patents, Trademarks, and Pending Trademarks, is likely to mislead and cause customers and the general public to believe that the products offered by Defendants are provided by or under the authority of Plaintiff.  Defendants' use of the Trademarks and the Pending Trademarks infringes Plaintiff's rights.

49.     Plaintiff's goodwill in the Trademarks and Pending Trademarks will be irreparably harmed if Defendants continue their Infringing Conduct.

50.     Defendants' Infringing Conduct constitutes trademark infringement under 15 U.S.C. Section 1114.

51.     Defendants' actions were undertaken in willful, deliberate and intentional disregard of Plaintiff's rights.

52.     Plaintiff has been damaged by Defendants' Infringing Conduct and has no adequate remedy at law.  Plaintiff will continue to suffer damages unless Defendants are restrained and enjoined from further infringing Plaintiff's rights.

## FOURTH CLAIM FOR RELIEF
### (Trade Dress Infringement under 15 U.S.C. § 1125(a))

53.     Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully set forth herein.

54.     Defendants market and sell acidic chemical additives and mixtures used as acidulating agents in interstate commerce that bear a confusingly similar imitation of the Mionix Trade Dress.  Pictures of the Mionix Trade Dress are attached hereto as Exhibits K and L.

Pictures of the confusingly similar marketing and packaging materials used by Defendants are attached hereto as Exhibits M and N.  The vast majority of poultry growers in the United States know FreshFlo as the most popular poultry drinking water acidulate.  It is and for over a decade been the most significant liquid player in the market for poultry drinking water.

55.     Defendants' use of confusingly similar imitations of the Mionix Trade Dress is likely to deceive, mislead and confuse purchasers and prospective purchasers into believing that the products sold by Defendants are manufactured by, authorized by or in some legitimate manner associated with Mionix Corporation and Plaintiff, which they are not.  The likelihood of confusion, mistake and deception engendered by Defendants' misappropriation of the Mionix Trade Dress is causing irreparable harm to the goodwill symbolized by the Mionix Trade Dress and the reputation for quality that it embodies.

56.     Defendants' activities are likely to cause confusion before, during and after the time of purchase because purchasers, prospective purchasers and others, viewing Defendants' use of confusingly similar imitations of the Mionix Trade Dress, are likely to mistakenly attribute the product to Mionix Corporation and Plaintiff.  By causing such a likelihood of confusion, mistake and deception, Defendants are inflicting irreparable harm to the goodwill symbolized by the Mionix Trade Dress and the reputation for quality that it embodies.

57.     On information and belief, Defendants knowingly, deliberately, willfully, intentionally and with malice adopted and used confusingly similar imitations of the Mionix Trade Dress.

58.     The Mionix Trade Dress is not functional.

24446906.3

59.     Defendants' knowing and intentional use of confusingly similar imitations of the Mionix Trade Dress entitles Plaintiff to damages, lost profits and treble damages as provided by 15 U.S.C. Section 1117(a), as well as an award of costs and attorney's fees.

### FIFTH CLAIM FOR RELIEF
### (Unfair Competition under Colorado Common Law)

60.     Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully set forth herein.

61.     The Defendants' Infringing Conduct constitutes misappropriation of valuable property rights of Plaintiff, trades on Plaintiff's goodwill embodied in its brand, Patents, Trademarks, Pending Trademarks and Products, and is thereby likely to confuse and deceive potential purchasers.  By virtue of the Defendants' Infringing Conduct, Plaintiff has engaged in unfair competition in violation of the common law of the State of Colorado.

62.     As a result of Defendants' Infringing Conduct, Plaintiff has suffered commercial harm.

63.     Defendants' Infringing Conduct was committed with willful and wanton disregard for Plaintiff's rights.

64.     Plaintiff has been and continues to be harmed irreparably by Defendants' Infringing Conduct, and Plaintiff has no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF
### (Trademark Infringement under Colorado Common Law)

65.     Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully set forth herein.

24446906.3

66.     Plaintiff's use of the Trademarks and Pending Trademarks predates their use by Defendants in the United States and in Colorado.

67.     Defendants' Infringing Conduct is likely to cause confusion, or to cause mistake, or to deceive potential purchasers and others, with the established and superior rights of Plaintiff in the Trademarks and Pending Trademarks, whereby they would be led to mistakenly believe that Defendants are affiliated with, related to, sponsored by, or connected with Plaintiff, or with Plaintiff's Products, or with the Patents, Trademarks, or Pending Trademarks, in violation of the common law of the State of Colorado.

68.     As a result of Defendants' Infringing Conduct, Plaintiff has suffered commercial harm.

69.     Defendants' Infringing Conduct was committed with willful and wanton disregard for Plaintiff's rights.

70.     Plaintiff has been and continues to be harmed irreparably by Defendants' Infringing Conduct, and Plaintiff has no adequate remedy at law.

### SEVENTH CLAIM FOR RELIEF
### (Violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq.*)

71.     Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully set forth herein.

72.     Defendants' Infringing Conduct constitutes deceptive trade practices in the course of its business, as defined by Colorado Revised Statute Sections 6-1-101, *et seq.*

73.     Defendants' Infringing Conduct significantly impacts the public as actual or potential customers of Plaintiff's Products.

24446906.3

74.     Defendants' Infringing Conduct was committed with intent to deceive the public and with willful and wanton disregard of the laws of the State of Colorado and Plaintiff's superior rights in the Products, Trademarks, Pending Trademarks and Patents.

75.     As a result of the Infringing Conduct, Plaintiff has suffered commercial harm to its Products, Trademarks and Pending Trademarks, as well as its goodwill therein.

76.     Plaintiff has and will continue to be irreparably harmed by Defendants' Infringing Conduct, and Plaintiff has no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF
### (Civil Conspiracy)

77.     Plaintiff hereby incorporates each of the preceding paragraphs of this Complaint as if fully set forth herein.

78.     Defendants set out on a course of conduct to obtain sales of products purporting to be Plaintiff's Products without Plaintiff's knowledge or oversight, and without compensating Plaintiff.

79.     Defendants agreed with one another to engage in a course of action involving unlawful acts, *i.e.* the Infringing Conduct, to accomplish that goal.

80.     Plaintiff has and will continue to suffer harm, including irreparable harm, as a proximate result of Defendants' Infringing Conduct.

## JURY DEMAND

Plaintiff requests a trial by jury on all claims so triable asserted in this Complaint and Jury Demand.

24446906.3

**RELIEF REQUESTED**

Therefore, Plaintiff respectfully requests that the Court enter an order:

A.     Preliminarily and permanently enjoining and restraining Defendants, and their agents, servants, employees, subsidiaries, affiliates and all persons in active concert or participation with, through or under them, from:

1.     using in any way any of the Trademarks or Pending Trademarks or referring at all to any of Plaintiff's Patents;

2.     using in any way the Mionix Trade Dress;

3.     continuing to engage in any of the Infringing Conduct;

4.     committing any act of unfair competition and from creating a false designation of origin or a false description or representation with respect to Plaintiff's Products, Patents, Trademarks, Pending Trademarks, or Trade Dress;

5.     committing any act of unfair competition by passing off or inducing or enabling others to sell or pass off as being attributed to Defendants any goods, technology, studies, products, patents, property, trademarks, accolades, validations or other matters which are those of Plaintiff;

6.     using in any manner websites, URLs, packaging, labels, signs, literature, display cards, packaging, logos, advertising or promotional materials, or other materials related to Plaintiff;

7.     making any statements on promotional materials, advertising or websites that are false or misleading as to source of origin; and

8.      committing any acts of deceptive or unlawful trade practices calculated to or which could conceivably cause members  of the trade or purchasing public to believe that Plaintiff's goods, technology, studies, products, patents, property, trademarks, accolades, validations or other matters as belonging to Defendants.

B.      Requiring that Defendants deliver up and transfer to Plaintiff any and all websites, URLs, social media sites, containers, signs, packaging materials, printing plates, advertising or promotional materials and any materials used in the preparation of such items, which in any way use or make reference to the Trademarks, the Patents, the Pending Trademarks, or the Trade Dress.  15 U.S.C. § 1118.

C.      Requiring that Defendants, within thirty days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, file with the Court and serve on counsel for Plaintiff a written report under oath setting forth details of the manner in which Defendants have complied with the Court's order pursuant to paragraphs A and B above.

D.      Requiring Defendants to account for and pay over to Plaintiff all damages sustained by Plaintiff, Defendants' profits attributable to their wrongful conduct, plus interest thereon, and for damages resulting from the Infringing Conduct, including enhanced and trebled damages under federal, Colorado, and otherwise applicable law, in an amount to be determined at trial but in no event less than $993,681, to be awarded jointly and severally against ACS, Larry L'Hotta and Deborah L'Hotta.

E.      Awarding Plaintiff the costs of this lawsuit and reasonable attorney's fees in accordance with 15 U.S.C. Section 1117, Colorado law, and otherwise applicable law.

F.      Awarding Plaintiff pre-judgment and post-judgment interest as recoverable under statute and common law on all sums; and

G.      Awarding Plaintiff such other and further relief as the Court deems just and proper.


Respectfully submitted August 24, 2016.

                              SNELL & WILMER L.L.P.


                               *s/ Christopher J.L. Diedrich*
                              Christopher J.L. Diedrich, #45213
                              1200 Seventeenth Street, Suite 1900
                              Denver, Colorado 80202
                              Telephone:  (303) 634-2000
                              Facsimile:  (303) 634-2020
                              E-mail:  cdiedrich@swlaw.com

                              Michael B. Reynolds (CA # 174534) (*pro hac vice pending*)
                              600 Anton Blvd., Suite 1400
                              Costa Mesa, CA 92626
                              Telephone:     (714) 427-7000
                              Facsimile:     (714) 427-7799
                              E-mail:  mreynolds@swlaw.com

24446906.3